UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICOLE P.,[1]
o/b/o A.C.,

                            Plaintiff            DECISION AND
                                                     ORDER

-vs-

                                                        1:20-CV-0454 CJS

COMMISSIONER OF SOCIAL
SECURITY,
                            Defendant.

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied Plaintiff's application for Supplemental Security Income ("SSI") benefits on behalf of A.C., her minor child.   Now before the Court is Plaintiff's motion (ECF No. 12) for judgment on the pleadings and Defendant's cross-motion (ECF No. 13) for the same relief.   For the reasons discussed below, Plaintiff's application is denied, and Defendant's application is granted.

## STANDARDS OF LAW

The legal principles applicable to claims for SSI benefits on behalf of children are well settled and not in dispute:

_____

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

> SSI is meant "[t]o assist those who cannot work because of age, blindness, or disability," by "set[ting] a Federal guaranteed minimum income" for those citizens. *Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (internal quotation marks omitted). A child under 1[8] is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

*Juarez on behalf of R.R.O. v. Saul*, 800 F. App'x 63, 64 (2d Cir. 2020).   More specifically,

> [t]o qualify for disability benefits, a child under the age of eighteen must establish that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "medically determinable impairment[ or combination of impairments] that is severe"; and (3) these severe impairments "meet, medically equal, or functionally equal the listings." 20 C.F.R. § 416.924(a)-(d); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir.2004). As is most pertinent here, a combination of impairments "functionally equal" the listings if they "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a.

*Swiantek v. Comm'r of Soc. Sec.,* 588 F. App'x 82, 83 (2d Cir. 2015).

> Functional limitations are to be evaluated in six "domains": (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. *Id*. § 416.926a(b)(1).
>
> ***
>
> A child will be found to have a marked limitation in a domain when his impairment interferes seriously with his ability to independently initiate, sustain, or complete activities. *Id*. § 416.926a(e)(2). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." *Id*. A child will be found to have an extreme limitation

2

> in a domain when his impairment interferes very seriously with his
> ability to independently initiate, sustain, or complete activities. *Id.* §
> 416.926a(e)(3).

*Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir.

2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.   Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773

4

AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will refer to the record only as necessary to address the errors alleged by Plaintiff.

On March 17, 2017, Plaintiff applied for disability benefits on behalf of her daughter, A.C., who was then five years of age.   A.C. was born prematurely and weighted only three pounds at birth.   At the time of the SSI application A.C. was still small for her age, but was in good health generally.   Plaintiff, though, was concerned about A.C. being underweight, since the child seemed to have little appetite and preferred to talk during meals.   Plaintiff also indicated that A.C. snored, seemed to be unrefreshed upon waking, and was sleepy throughout the day. Additionally, Plaintiff reported that A.C.'s behavior was problematic, in that she was impulsive, defiant and aggressive, and had poor communication skills and poor performance at school. (Tr. 14).

It is undisputed, however, that at all relevant times A.C.'s behavior and eating habits were reportedly better at school than at home. (*See, e.g.*, Tr. 232, 240, 247).   The record further indicates that between the date of application and the date of the ALJ's decision, A.C.'s problems with sleep and eating/body weight,

as well as her problems with performance and behavior at school, improved significantly.  For example, despite remaining small for her age, A.C. gradually gained weight and was deemed healthy by her doctor.   Additionally, A.C.'s sleep problem, which was attributed to obstructive sleep apnea, improved following a tonsillectomy and her use of a continuous positive airway pressure ("CPAP") machine.  Further, with regard to A.C.'s academic performance, a 2018 report from her school's committee on special education observed that A.C. had become a leader in her class and was maintaining an 88 grade point average.[2]

On February 20, 2019, the ALJ issued a decision finding that A.C. was not disabled at any time between the application date and the date of his decision. (Tr. 10-33).   The ALJ found that A.C. had severe impairments consisting of attention deficit-hyperactivity disorder ("ADHD"), speech and language delay, oppositional defiant disorder ("ODD"), obstructive sleep apnea and low weight. (Tr. 13). However, the ALJ found that those impairments, either singly or in combination, did not meet, medically equal or functionally equal the severity of a listed impairment.  In that regard, the ALJ found, overall, that while the medical and

---

[2] Plaintiff purports to argue that A.C.'s school performance actually did not improve. *See*, Pl. Memo of Law (ECF No. 12-1) at p. 22 ("While the ALJ concluded [that A.C.] improved, her most recent IEP records showed that she in fact had expanded level of special education services contradicting improvement."); *see also*, Pl. Reply (ECF No. 14) at p. 4 ("[W]hile the ALJ concluded [that A.C.] improved, this was faulty lay conclusion as the most recent IEP records showed that she required expanded level of special education services contradicting improvement; and this is not compared to the same age child without impairments.").   However, while A.C.'s progress may have been due in part to increased special education services, there can be no legitimate dispute that her performance and behavior improved.   Indeed, on February 26, 2018, Plaintiff herself reported that A.C. was doing "excellent" at school. *See, e.g.*, Tr. 485 (Doctor's note, reporting: "She is doing excellent in school now that she has an IEP, she gets speech therapy.").

educational records from before or around the time of the application were more supportive of Plaintiff's claims about her daughter's functioning, later records were not.   Apart from such improvement, the ALJ found that A.C.'s functional limitations at the start of the relevant period did not meet the Commissioner's durational requirements, and that the severity of those limitations was, in any event, less than marked even at their worst.[3]   The ALJ further noted that school and medical records from 2018 showed significant improvements in A.C.'s functioning, and that such records were, in many respects, inconsistent with Plaintiff's statements about A.C.   Indeed, the ALJ discussed how, to the extent that A.C. was still having problems in certain areas, as Plaintiff claimed, it was primarily at home and not at school, since the school records indicated that A.C's behavior and academic performance were significantly better. *See, e.g.*, Tr. 20 ("It appears in these records that the claimant presented with behavioral problems at school and at home, but that the claimant began to behave well at school within a short amount of the early 2017 evaluations. . . .   The only evidence of continued behavioral problems comes from subjective reports of her mother.").[4]

---

[3]  *See,* ALJ's decision, Tr. at 23 ("The evidence more favorable to the mother's allegations appears in the record at the initial determination level and otherwise did not suggest duration marked or greater limitations.   The subsequent evidence received at the hearing level indicates improvement since.").

[4]From this inconsistency, the ALJ concluded that Plaintiff was overstating A.C.'s symptoms. *See, e.g.*, Tr. at 21 ("The only person in the record at the time of the report card who does not seem to agree that the claimant at least satisfactorily acquires and uses information, except perhaps for her math teacher, is the mother.   Moreover, the IEP [("individualized education program")] report and the teacher or teachers reflected in the report card indicated that [A.C.] excels in effort and in social interaction.   The undersigned finds its unlikely that the [child] makes a daily 180-degree turn in behavior, emotions, development and comprehension every day she returns home from school, only to return the next day readying and willing to 'persevere' with difficult tasks and be friendly, helpful and a 'pleasure.'"). On this same point, the ALJ noted, for example, that Plaintiff

Based on the ALJ's review of the evidence, he concluded that A.C. had less than marked limitations in all six domains of functioning, and was therefore not disabled.   More specifically, the ALJ found that the child had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for herself and health and physical well being, and no limitation in the domain of moving about and manipulating objects. Tr. at pp. 26-33.

In this action, Plaintiff primarily contends that the ALJ erred by relying on a medical opinion that was "stale" since it was rendered "prior to [A.C's receipt of] additional special education services" and additional medical findings.[5] Specifically, Plaintiff contends that, "[i]n this case, the only medical opinion of record related to Plaintiff's functioning in childhood domains was a non-examining and outdated opinion done in 2017 prior to later IEP with increased special education services and medical records."[6]   On this point, Plaintiff is referring to an opinion from "B. Stouter, MD" ("Stouter"), a non-examining agency medical

---

had admitted to A.C.'s doctor that A.C. was doing well in school, and that Plaintiff had initially not been truthful with A.C.'s doctor about the child's infrequent use of her prescribed CPAP machine. *See, e.g.*, Tr. 22 ("[T]he mother conceded that 'things were good at school' just five weeks later on April 3, 2018 when she saw Carolyn Viola, FNP.   She also conceded that the CPAP and new medication (Adderall) had yielded improvement in sleep and behavior at home.   Ms. Viola['s] notes also indicate that a Vanderbilt Assessment of home behavior was 'good.'   The statements of the mother to Ms. Viola on April 3, 2018 would also seem to contradict her own complaints to the IEP committee when they met again in May 2018."); *see also, id*. at pp. 25, 26 ("[T]he mother again reported [CPAP] compliance but was contradicted by the data download.   The mother eventually admitted that a component was torn out [of the CPAP machine] by the claimant's younger brother and as a result the machine was no longer working. [Tr. 399]   … [Nevertheless,] [s]chool records make no mention of hypersomnolence [(drowsiness)].").
[5] ECF No. 12-1 at p. 2.
[6] ECF No. 12-1 at p. 15.

8

consultant, who found that A.C. had "less than marked limitations" in the domains of functioning.[7]   Plaintiff argues that Stouter's opinion does not constitute "substantial evidence" to support the ALJ's conclusions, since it was "stale." Plaintiff further contends that since the only medical opinion of record was stale, the ALJ had a duty to develop the record to obtain a more up-to-date medical opinion, which he failed to do.   Because of that failure, Plaintiff maintains, the ALJ improperly based his findings on "lay opinion" and "selective reading"[8] of the record.   Additionally, Plaintiff contends that the ALJ failed to consider that A.C.'s apparent improvement was attributable to a "structured or supportive setting," referring to the "additional school and medical support" that A.C. received.[9] Plaintiff further contends that the ALJ should have developed the record by obtaining missing treatment records from the Monsignor Carr Clinic ("Monsignor Carr"), where A.C. reportedly received counseling.

Defendant opposes Plaintiff's motion for judgment on the pleadings and cross-moves for the same relief, arguing that the ALJ's decision is free of legal error and supported by substantial evidence.

The Court has carefully reviewed and considered the parties' submissions and finds, for the reasons discussed below, that Plaintiff's arguments lack merit

---

[7] ECF No. 12-1 at pp. 5, 16, 17, 18.

[8] ECF No. 12-1 at p. 16.   By "selective reading," Plaintiff means that the ALJ "cherrypicked" the record to find evidence that supported his decision to deny the application, and "failed to discuss conflicting evidence" and "selectively ignore[d] evidence that undermine[d] his determination." ECF No. 12-1 at pp. 28, 29.

[9] *See, e.g.*, ECF No. 12-1 at p. 22 ("While the ALJ concluded Plaintiff improved, her most recent IEP record showed that she in fact had expanded level of special education services contradicting improvement.").

and that the Commissioner's decision should be affirmed.

DISCUSSION

<u>The Alleged Failure by the ALJ to Develop the Record by Obtaining
Records from the Monsignor Carr Clinic</u>

Plaintiff contends that the ALJ failed to develop the record, since he should
have obtained records from the Monsignor Carr Clinic where A.C. reportedly
received counseling for temper tantrums.   In that regard, the first mention of A.C.
actually attending such a counseling session was at the administrative hearing,
when Plaintiff stated that A.C. received counseling at Monsignor Carr "two to three
times per month."[10] Prior to that, the record indicates that A.C. had received a
referral to Monsignor Carr, but that Plaintiff had never gotten around to actually
making an appointment for A.C.   Indeed, as early as February 8, 2016, Plaintiff
began talking about taking A.C. for treatment at Monsignor Carr. Tr. 372.
However, on February 26, 2018, Plaintiff told A.C's doctor that she had never
actually taken A.C. to an appointment at Monsignor Carr. Tr. 485 ("They made an
appointment at Monsignor Carr and it is hard to keep up with the appointments.
She has not yet seen them.  . . .  They are still planning to go to Monsignor
Carr."); *see also, id*. at 391, 454 (Mother will set up appointment [at Monsignor
Carr]").   Additionally, Plaintiff did not list Monsignor Carr as one of the child's

---

[10] ECF No. 12-1 at p. 27.   The hearing took place on December 11, 2018.   However, as of
February 2018, Plaintiff had still not made any appointment for A.C. at Monsignor Carr. Tr. 485.
Accordingly, A.C. could have attended counseling at Monsignor Carr for, at most, ten months,
though Plaintiff offers no information concerning actual dates that A.C. received services from
Monsignor Carr.

10

treatment providers in the paperwork that she submitted to the Commissioner. Tr. 188-190.   Moreover, at the administrative hearing, the attorney who represented Plaintiff, and who also represents her in this action, made no objection to the record even though it contained no records from Monsignor Carr. Tr. 44.[11]   Further, after Plaintiff made passing reference, during her hearing testimony, to A.C. attending counseling sessions at Monsignor Carr, counsel did not react or request an opportunity to obtain the alleged missing records.   Rather, counsel raises the issue for the first time in this action.

The legal principles applicable to this claim, involving an ALJ's duty to develop the record, are generally well settled:

> "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs*., 685 F.2d 751, 755 (2d Cir. 1982)). "Whether dealing with a *pro se* claimant or one represented by counsel, the ALJ must 'develop [the claimant's] complete medical history.'" *Lopez v. Comm'r of Soc. Sec*., 622 Fed.Appx. 59, 60 (2d Cir. 2015) (summary order) (citing 20 C.F.R. § 404.1512; *Perez*, 77 F.3d at 47 (describing duty to develop record)). "[T]he agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 Fed.Appx. 7, 9 (2d Cir. 2014) (summary order) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lowry v. Astrue*, 474 Fed.Appx. 801, 804 (2d Cir. 2012) (unpublished opn.)

---

[11]  In his pre-hearing brief, the attorney noted only that A.C. had received a referral to Monsignor Carr, which, as already noted, was correct.

(quotations and citations omitted).

*Gonzalez v. Colvin*, No. 1:15-CV-00767(MAT), 2018 WL 1040250, at *2 (W.D.N.Y.

Feb. 24, 2018).   On the other hand,

> [w]hile an ALJ does have an affirmative duty to develop the record, even if a Plaintiff is represented by counsel, the primary duty rests with Plaintiff to present evidence that he has functional limitations rendering him incapable of performing substantial gainful activity. 42 U.S.C. § 423(d)(5)(A), applicable to SSI through 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512(c), 404.1545, 416.912(c), 416.945(a)(3); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so."); SSR 17-4p, 2017 WL 4736894 *1 ("Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims.").
>
> Moreover, an ALJ has no obligation to obtain additional evidence when the record is already sufficiently developed to allow for a determination as to disability. *See* 20 C.F.R. §§ 404.1520b(b)(1)-(2), 416.920b(b)(1)-(2) (If the evidence is incomplete or inconsistent but sufficient for the ALJ to make a decision, he will make a decision based on the existing evidence); *see also Perez*, 77 F.3d at 48 (the ALJ is not required to obtain additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability.").

*Daniel R. v. Comm'r of Soc. Sec.*, No. 20-CV-00589-MJR, 2021 WL 1747788, at

*6 (W.D.N.Y. May 4, 2021).

Furthermore, "[a]lthough the ALJ has the duty to develop the record, such

a duty does not permit a claimant, through counsel, to rest on the record—indeed,

to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not

performing a more exhaustive investigation." *Gonzalez v. Colvin*, 2018 WL 1040250, at *3 (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (citation omitted)).

Here, Plaintiff's counsel rested on the record, proceeded with the hearing, declined to request any opportunity to submit additional records, and only now faults the ALJ for failing to obtain records from Monsignor Carr.   On these facts, the Court finds that to the extent the ALJ may have erred by failing to obtain the records *sua sponte*, such error does not require reversal.   This is particularly true where, as here, even now Plaintiff makes no offer of proof as to what information the missing records might contain.   Additionally, the Court finds that the record was sufficiently developed to allow the ALJ to make a decision even without the missing records.   Consequently, this aspect of Plaintiff's motion is denied.

<u>The Alleged Error by the ALJ in Relying on a Stale Medical Opinion</u>

Plaintiff's primary argument is premised on the assumption that an ALJ cannot render a decision without the aid of expert medical opinion. From that, Plaintiff argues that there is only one medical opinion of record (that of Dr. Stouter), and that such opinion is stale, since it was rendered prior to A.C.'s receipt of special education services and additional medical treatment.   Plaintiff concludes, therefore, that the ALJ's decision rests only upon "lay opinion and unsupported conclusions," as opposed to substantial evidence.   However, the Court disagrees.

To begin with, contrary to Plaintiff's assertion that an ALJ cannot render a decision without the aid of expert medical opinion, the Second Circuit has made

clear that medical opinion evidence is not required, provided that the record contains other evidence from which the ALJ can assess the claimant's RFC. *See, Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Here, the treatment notes were in line with the ALJ's RFC determinations. And because Cook failed to adduce any medical evidence inconsistent with the ALJ's determinations, the ALJ was not faced with "any clear gaps in the administrative record" that gave rise to an affirmative obligation to seek a medical opinion. *See Rosa*, 168 F.3d at 79-80."); *see also, Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where, however, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013) (summary order), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes)."); *Tanya R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00262 EAW, 2021 WL 3076426, at *4 (W.D.N.Y. July 20, 2021) ("Plaintiff argues that the ALJ was not empowered to interpret raw medical data in

crafting the RFC. Notably, this was not a case where the ALJ rejected medical opinion evidence of record contrary to the RFC, but rather, the record lacked any such opinion evidence relating to Plaintiff's mental impairments. But the lack of opinion evidence alone does not necessarily direct remand, as Plaintiff contends. . . .   Here, the ALJ expressly addressed Plaintiff's mental health treatment records and noted that Plaintiff did not provide any additional or recent medical evidence of mental health treatment, nor has Plaintiff identified any such records to the Court that the ALJ did not consider or improperly rejected. In addition, the ALJ provided a sufficient explanation for her determination that Plaintiff's mental health limitations were managed by medication and therapy and explained the evidentiary bases for her determination of Plaintiff's RFC. The absence of additional opinion evidence as to Plaintiff's mental impairments does not appear to be the result of an "obvious gap" in the record needing to be filled.   The Court concludes that the ALJ was not required to further develop the record in this case, because the evidence of record was 'adequate to permit the ALJ to make a disability determination.' *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010). The ALJ had adequate evidence in the record from which she could and did properly assess Plaintiff's RFC. Accordingly, neither reversal nor remand is warranted.") (citation omitted).

Consequently, to the extent Plaintiff contends that remand is necessarily required based on the alleged lack of medical opinion evidence, the argument

lacks merit.[12]

Moreover, the Court does not agree that Dr. Stouter's opinion was stale. Reversal may be appropriate where the Commissioner's decision to deny benefits rests on a consultative opinion that was "stale" because it was rendered on an incomplete record, particularly where subsequent developments in the medical evidence cast doubt on the accuracy of the opinion:

> In *Hidalgo v. Bowen*, under the regulations then in effect, the Second Circuit rejected an ALJ's decision that relied exclusively on the opinion of a non-examining consultant, in part because the non-examining physician reviewed a limited record that did not include subsequent clinical findings, such as clinical notes of a treating physician and hospital records including X-rays. 822 F.2d 294, 295–96, 298 (2d Cir. 1987). Because this subsequent evidence "confirmed" the RFC determination of the primary treating physician and "may have altered [the non-examining consultant's] conclusions," the Second Circuit remanded to the ALJ. *Id*. at 298. But in *Camille v. Colvin*, the Second Circuit reached the opposite conclusion in a non-precedential opinion, rejecting an argument that a non-examining source was "stale" solely because a non-examining source did not review later submitted evidence where "th[at] additional evidence does not raise doubts as to the reliability of [the non-examining source's] opinion." 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (distinguishing *Hidalgo*, 822 F.2d at 295–96, 298). In that case, because the later opinion evidence did not differ materially from the opinions that the non-examining physician did consider, the Second Circuit found that the ALJ committed no error by relying on the non-examining physician. *Id*.

*West v. Berryhill*, No. 3:17-CV-1997 (MPS), 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019) (footnote omitted).   Moreover,

---

[12] Since this argument is an incorrect statement of the law, Plaintiff's counsel should cease making it to the Court in subsequent cases.

"[t]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, 1:16-CV-01005, 2018 U.S. Dist. LEXIS 137417, 2018 WL 3868721 (W.D.N.Y. Aug. 14, 2018). *See also Cruz v. Commissioner of Social Security*, 1:16-CV-00965, 2018 U.S. Dist. LEXIS 128514, 2018 WL 3628253 (W.D.N.Y. July 31, 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition[.]"). Thus, "[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates substantially similar limitations and findings." *Pritchett v. Berryhill*, 1:16-CV-00965, 2018 U.S. Dist. LEXIS 103358, *23, 2018 WL 3045096 (W.D.N.Y. June 20, 2018) (internal citations and quotations omitted). *See also Camille v. Colvin*, 104 F. Supp. 3d 343-44 (WDNY 2015) (An opinion is not stale if it is significantly mirrored by records formed at a later date.).

*SARAH H. o/b/o A.H., Plaintiff, v. ANDREW SAUL, Comm'r of Soc. Sec., Defendant.*, No. 6:20-CV-6209-MJR, 2021 WL 2451528, at *3 (W.D.N.Y. June 16, 2021). With regard to an ALJ's alleged reliance on "stale" evidence, "[o]verall, remand is warranted where more recent evidence in the record 'directly contradict[s] the older reports of [claimant's] functioning on which the ALJ relied' and the ALJ failed to analyze the more recent evidence." *Cassandra B. o/b/o A.L.T. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1194 (WBC), 2021 WL 780300, at *3 (W.D.N.Y. Mar. 1, 2021) (quoting *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, (2d Cir. 2020)).

Here, Stouter's opinion is based on medical evidence in the record as of May 2017. Tr. 70. As already discussed, the ALJ found that A.C.'s functioning

17

was perhaps at its worst at that time, and that it improved significantly and rapidly from that point.   Even so, Dr. Stouter concluded that Plaintiff had only less-than-marked limitations in the various domains of functioning.   Consequently, there is no possibility that, even had Stouter been aware of the later developments, her opinion would have been more favorable to Plaintiff.   Moreover, Plaintiff has not shown that A.C.'s condition deteriorated after the date of Stouter's opinion. Rather, as already discussed, A.C.'s condition actually improved following Stouter's opinion.   Consequently, Stouter's opinion was not stale, and Plaintiff's argument on that point lacks merit.[13]

<u>The ALJ's Alleged Failure to Consider A.C.'s Structured or Supportive Setting</u>

Of course, as mentioned earlier, Plaintiff contends that A.C.'s functioning did not really improve, and that it only appeared to improve due to the increased provision of supportive services that A.C. received.   Plaintiff further alleges that the ALJ failed to consider that A.C.'s apparent improvement was attributable to a "structured or supportive setting," referring to the "additional school and medical support" that A.C. received.   However, the Court again disagrees.

When considering the child's functioning in the six relevant domains, the ALJ must consider the effect that a structured or supportive setting may be having, and how the child would function outside of that structured or supportive setting:

Because a structured educational setting "may minimize signs and

---

[13]  The Court also disagrees with Plaintiff's assertion that the ALJ engaged in "selective reading" or "cherry picking" of the evidence.

symptoms of [a claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [she has] or would have outside the structured setting." 20 C.F.R. § 416.924a(b)(5)(iv)(C). "Even if [the claimant is] able to function adequately in the structured or supportive setting, [the ALJ] must consider how [the claimant] function[s] in other settings and whether [the claimant] would continue to function at an adequate level without the structured or supportive setting." *Id*. For example, "if [the claimant's] symptoms or signs are controlled or reduced in a structured setting," the ALJ must "consider ... the amount of help [the claimant needs] from [his or her] parents, teachers, or others to function as well as [she does]; adjustments [made] to structure [the claimant's] environment; and how [the claimant] would function without the structured or supportive setting." *Id*. § 416.924a(b)(5)(iv)(E).

*Jennifer N. o/b/o J.F.N. v. Comm'r of Soc. Sec.*, No. 19-CV-1672-LJV, 2021 WL 916018, at *4 (W.D.N.Y. Mar. 10, 2021).

Here, the ALJ expressly indicated that when evaluating A.C.'s performance in the various domains as "compared to other children of the same age who do not have impairments," he "considered the type, extent, and frequency of help the claimant needs to function." Tr. 14.   Moreover, as already explained, the ALJ found that A.C.'s functioning in the relevant domains was "less than marked" *even before* A.C. was placed in the "structured or supportive setting" to which Plaintiff refers. *See*, ALJ's decision, Tr. at 23 ("The evidence more favorable to the mother's allegations appears in the record at the initial determination level and otherwise *did not suggest duration marked or greater limitations*.   The subsequent evidence received at the hearing level indicates improvement since.") (emphasis added); *see also, id*. at 22 ("[E]ven before the claimant began to receive

19

intervention at school, her IQ testing indicated she still functioned in the average, albeit in the lower range of average intellect.").   Accordingly, the ALJ did not find that A.C.'s functioning in the relevant domains was less than marked only after she received additional treatment and special education services.   Rather, the ALJ found that A.C.'s functioning clearly improved in the structured or supportive setting, but that she was not disabled even prior to that.   Consequently, the Court finds that Plaintiff's argument on this point lacks merit.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 12) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 13) for the same relief is granted, and this matter is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and to close this action.

So Ordered.

Dated: Rochester, New York
         August 31, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge